UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN SOUDANI, *et al.*

Plaintiffs,

v.

COUNTY OF ORANGE, *et al.*

Defendants.

Case No. 25-CV-4320 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

Eman Soudani and Martin Soudani (collectively, "Plaintiffs") brought this Action against the County of Orange, the Orange County District Attorney's Office, David Hoovler, Christopher Borek, and John Doe as Administrator of the Estate of Stewart Rosenwasser, (collectively, "Defendants") asserting violations of their Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution pursuant to 42 U.S.C. § 1983, as well as a civil conspiracy claim pursuant to 42 U.S.C. § 1985, claims under multiple *Monell* theories, and state law claims. (Compl. ¶¶ 251–371.) Defendants have moved for a stay of this Action pending the disposition of the related federal criminal proceeding and Plaintiffs' appeal of a state court action pursuant to New York's Article 78. (Mot. to Stay ("Mot." or the "Motion") (Dkt. No. 30); Defs.' Mem. in Supp. of Mot. to Stay ("Defs.' Mem.") (Dkt. No. 31).) Plaintiffs oppose. (Pls.' Mem. in Opp'n ("Pls.' Opp'n") (Dkt. No. 33).) Defendants also seek a stay of discovery on the same grounds. (*See* Letter Mot. for Discovery from Arthur D. Middlemiss, Esq. to Court (Mar. 9, 2026) (Dkt. No. 36); Letter from David H. Chen, Esq. to Court (Mar. 9, 2026) (Dkt. No. 37).) For the following reasons, the Court determines that a limited stay is appropriate in these circumstances. The Court denies the remainder of the requests raised in the Parties'

papers, without prejudice to renewal after judgment has been entered in the criminal action proceeding before Judge Cathy Seibel. *See United States v. Soudani*, 24-CR-555 (S.D.N.Y.). The Parties are directed to provide a joint status update to the Court by no later than June 19, 2026, or sooner in the event of any developments in the criminal proceeding could affect the stay or the status of this Action.

## I. Background

The following factual background is based on allegations in the Complaint, and the declaration, memoranda, and exhibits submitted in connection with the Motion. Evidence outside of the pleadings may be considered by a court to determine factual issues in examining a motion to stay. *Specrite Design, LLC v. Elli N.Y. Design Corp.*, No. 16-CV-6154, 2017 WL 3105859, at *1 (S.D.N.Y. July 20, 2017).

Plaintiffs allege that non-Party Mout'z Soudani, brother of Plaintiff Eman Soudani and uncle of Plaintiff Martin Soudani, subjected them to years of serious abuse. (Am. Compl. ¶¶ 41–42, 50–52, 55.) Around mid-October 2022, Plaintiffs left the New York home where they lived with Mout'z Soudani and escaped to Colorado. (*Id.* ¶¶ 41, 54.) They claim that Mout'z Soudani became enraged at their departure; he met with a friend, who was an FBI Agent, and asserted that Plaintiffs stole money from him when they left for Colorado. (*Id.* ¶¶ 56–57.) Mout'z Soudani also mentioned to the FBI Agent that Stewart Rosenwasser ("Rosenwasser"), at the time an Executive Assistant District Attorney in Orange County, owed him a large amount of money. (*Id.* ¶¶ 4, 57.)

Mout'z Soudani purportedly began to contact Rosenwasser, and Rosenwasser commenced an investigation into Plaintiffs' actions. (*Id.* ¶¶ 58–59.) During the course of this investigation, Rosenwasser purportedly obscured the extent of his existing relationship with

Mout'z Soudani and the family. (*Id.* ¶ 61.) Plaintiffs also claim that Rosenwasser received checks for significant amounts of money from Mout'z Soudani while the investigation and eventual prosecution were underway. (*E.g. id.* ¶¶ 68, 76, 90.) Rosenwasser purportedly abused the grand jury process to obtain information on Plaintiffs, (*id.* ¶¶ 69–73), obtained search warrants to be executed in Colorado related to the investigation of Plaintiffs, (*id.* ¶¶ 91–93, 99), traveled to Colorado, and participated in the arrests of Plaintiffs as well as the execution of the search warrants, (*id.* ¶¶ 103–07, 111–12). Throughout these events, Rosenwasser continued to cover up the nature of his relationship with the Soudani family and Mout'z Soudani. (*Id.* ¶¶ 122, 135, 141.) Plaintiffs allege that the Orange County District Attorney's Office, Defendant Hoovler, and Defendant Borek disregarded the evidence of the relationship between Mout'z Soudani and Rosenwasser and were complicit in the bribery scheme, or in the alternative that they were "incompeten[t]" such that the misconduct was able to continue. (*Id.* ¶ 211.) They further claim that Defendants Hoovler and Borek "facilitated the bribery scheme and knowingly, intentionally, and maliciously violated Eman and Martin Soudani's constitutional rights." (*Id.* ¶ 214.)

A felony complaint based on this investigation was eventually brought against Eman Soudani, and, in exchange for the dismissal of that complaint, she executed a release of potential civil liabilities. (*Id.* ¶ 174.) Eventually, Martin Soudani pleaded guilty to one count of grand larceny in the third degree, purportedly due, in part, to fear that his mother would be prosecuted further. (*Id.* ¶¶ 181–82.) Martin Soudani was sentenced to an indeterminate sentence of one to seven years jail time. (*Id.* ¶ 189.)

On June 18, 2024, FBI agents interviewed Rosenwasser. (*Id.* ¶ 190.) Three days later, on June 21, 2024, Rosenwasser resigned from his position with the Orange County District

Attorney's Office and retired from the practice of law effective immediately. (*Id.* ¶ 191.) On September 24, 2024, federal prosecutors in the Southern District of New York unsealed an indictment charging Rosenwasser and Mout'z Soudani in connection with the bribery scheme that led to Plaintiffs' arrest and prosecution. (*Id.* ¶ 203.) That same day, federal authorities tried to arrest Rosenwasser at his home and he died by apparent suicide. (*Id.* ¶ 204.) The criminal proceedings against Mout'z Soudani remain pending. (*See United States v. Soudani*, No. 24-CR-0555.)

On October 15, 2024, Martin Soudani's conviction was vacated. (*Id.* ¶ 207.)

On June 25, 2025, Martin Soudani filed a New York Civil Practice Law and Rules ("CPLR") Article 78 petition against Orange County in New York State Supreme Court. (*See Soudani v. County of Orange, Orange Cnty. Sup. Ct*. Index No. EF005975-2025h.) In that action, Martin Soudani seeks an order directing Orange County to indemnify and defend Rosenwasser's estate in this Action. (*See* Decl. of David H. Chen, Esq. in Supp. of Mot. to Stay ("Chen Decl."), Ex. 3, at 16 (Dkt. No. 32-3).) The Article 78 petition was denied on September 16, 2025. (*See id.*, Ex. 4, at 15 (Dkt. No. 32-4).) Martin Soudani appealed from this denial on September 17, 2025; the appeal is currently pending before New York's Supreme Court, Appellate Division. (*See Soudani ex. rel Rosenwasser v. County of Orange*, No. 2025-11394 (App. Div.).)[1]

---

[1] This Action's procedural history leads to the curious outcome that Martin Soudani is technically a Defendant as well as a Plaintiff in this Action, as he filed a petition to be appointed administrator of Rosenwasser's estate in place of the Orange County Commissioner of Finance, for the purpose of requesting indemnification from any party that might be under a legal obligation to indemnify the estate. (Chen Decl. Ex. 2, at 3–4 (Dkt. No. 32-2) (explaining that Martin Soudani would receive "temporary limited letters of administration . . . for the limited purpose of accepting service of process regarding any causes of action asserted against the Estate related to . . . the actions of the Decedent without any obligation to defend same, tendering of the

<u>II. Analysis</u>

<u>A. Federal Criminal Proceedings</u>

Courts addressing whether to stay a civil proceeding pending the resolution of a criminal proceeding look to six factors:  (1) the "extent to which the issues in the criminal case overlap with those presented in the civil case," (2) the "status of the [criminal] case," (3) the "private interests of and burden on the defendants," (4) the "private interests of the plaintiffs," (5) the "interests of the courts," and (6) the "public interest." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CV-4355, 2023 WL 3686173, at *2 (S.D.N.Y. May 26, 2023) (quoting *Louis Vuitton Malletier S.A. v. LY USA. Inc.*, 676 F.3d 83, 99 (2d Cir. 2012)).  These factors serve as a "rough guide" for the Court's exercise of discretion, an inquiry that "ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Louis Vuitton*, 676 F.3d at 99 (quotation marks omitted).

The first factor is the "most important" element "at the threshold." *In re 650 Fifth Ave.*, No. 08-CV-10934, 2011 WL 3586169, at *3 (S.D.N.Y. Aug. 12, 2011).  Defendants argue that the civil complaint frequently cites the criminal indictment, and note that nearly half of the paragraphs in the civil complaint reference Mout'z Soudani despite his not being a defendant in the civil action.  (Defs.' Mem. 14.)  In response, Plaintiffs argue that there is "no party overlap," because Soudani is not a defendant in the civil case.  (Pls.' Opp'n 12.)  Plaintiffs' view of "overlap" is too narrow—the appropriate inquiry is not whether the *Parties* overlap, but whether the *issues* in the two actions overlap.  *See, e.g.*, *Sec. & Exch. Comm'n v. Pirello*, No. 23-CV-8953, 2024 WL 456828, at *7 (E.D.N.Y. Feb. 5, 2024) (explaining that a stay was appropriate

---

Estate's defense of any such claims to and requesting indemnification from any party legally bound to do so including but not limited to the County of Orange, and pursuing any remedies related to the issues of defense and indemnification").)

where the civil and criminal cases were based on the "exact same" underlying fraud).  Here, they do: both involve the same alleged instances of bribery and prosecutorial misconduct, cite the same communications between Soudani and Rosenwasser, and involve the same victims of the alleged misconduct.  (*Compare* Compl. ¶¶ 11–14 (alleging Rosenwasser accepted bribe payments from Mout'z Soudani, "supervised and participated in" the investigation of Plaintiffs, the execution of search warrants, and Plaintiffs' arrests, obscured the nature of his relationship with Mout'z Soudani, and prevented his recusal from the case) *with United States v. Soudani*, 24-CR-555 (Compl. ¶¶ 1–4 (Dkt. No. 2) (claiming Rosenwasser accepted bribe payments from Mout'z Soudani in exchange for his declining to recuse himself from and assisting with the investigation and prosecution of two individuals, stating that Rosenwasser traveled to Colorado, charged the individuals, and obscured his relationship with Mout'z Soudani).)  That overlap strongly suggests that a stay is proper.  *See Gilead Scis. Inc. v. Khaim*, 753 F. Supp. 3d 262, 269 (E.D.N.Y. 2024) (explaining that "[p]arallel cases substantially overlap when they arise from the same facts and involve nearly identical issues" and concluding that, where it is undisputed that the actions arise from the same facts and involve the same issues, this factor "weighs in favor of a stay" (quotation marks omitted)), *aff'd*, No. 24-CV-04259, 2024 WL 5318631 (E.D.N.Y. Dec. 17, 2024).

Although cases in a similar posture—involving a non-party criminal defendant whose actions are central to the civil action where a stay is sought—are few and far between, the few decisions that do exist suggest that stays are appropriate in this context when the criminal and civil actions have substantive overlap.  *See, e.g., Douglas v. United States*, No. 03-CV-04518, 2006 WL 2038375, at *5 (N.D. Cal. July 17, 2006) (explaining that civil depositions of individuals who "will or potentially could be called to testify in the . . . criminal trial" generated

the "concern that some witnesses under investigation will potentially invoke their Fifth Amendment right, frustrating the discovery process," and further noting that "allowing the depositions could give an unfair preview of the Government's evidence, theories and strategies"); *see also El v. Black*, No. 23-CV-10317, 2025 WL 1707817, at *2 (S.D.N.Y. June 18, 2025) (taking six-factor stay analysis as the court's "starting point" to determine whether a stay would be appropriate where the defendant from parallel criminal proceeding was the plaintiff in the civil proceeding, though recognizing that self-incrimination concerns are "less relevant" where the subject of the criminal prosecution is the civil plaintiff), *reconsideration denied*, No. 23-CV-10317, 2025 WL 2915804 (S.D.N.Y. Oct. 10, 2025); *Corley v. Vance*, No. 15-CV-1800, 2016 WL 11717323, at *2 (S.D.N.Y. Sept. 16, 2016) (noting that the concerns underpinning the six-factor analysis are "less relevant" where the criminal defendant is the civil plaintiff, but nevertheless "consider[ing] the relevant factors as they pertain to th[e] case" before the court); *Douglas*, 2006 WL 2038375, at *6 (noting that a grand jury investigation of a non-party was ongoing and "[i]f subpoenaed for deposition," the non-party might also invoke their Fifth Amendment right, "resulting in additional burdens on the witnesses since it may require further appearances plus the cost of counsel").  Overlap in substance is significant, even when the criminal action involves a non-party witness or potential witness, because:

> Where a civil and criminal proceeding overlap in subject matter, there is a concern that the broad scope of civil discovery may be used as an end run around the stricter rules of criminal procedure to permit an otherwise impermissible preview of the Government's criminal case. . . .
>
> If these civil proceedings continue, the Government will not be able to take the discovery required to mount an effective and vigorous defense of the present action until the criminal proceeding is completed.  This is because [the non-party witness being prosecuted in the criminal action] will likely rely on his Fifth Amendment rights to refuse to answer any questions in civil discovery [based on the theory that the criminal and civil proceedings stemmed from involvement with similar allegedly-unlawful activities, if not the exact same conduct].  . . . Similarly, [a

> second non-party witness, who had not yet been indicted], who had involvement in the transactions at issue [in the civil action] . . . may invoke his Fifth Amendment rights to thwart the Government's civil discovery efforts out of fear of indictment by the continuing grand jury investigation.  In sum, the Government would be deprived of meaningful access to the most critical fact witnesses and thereby undermined in its ability to present a defense.

*AWS Mgmt., LLC ex rel Petty v. United States*, No. 05-CV-1056, 2006 WL 824506, at *2 (N.D. Cal. Mar. 29, 2006).[2]  Here, although Mout'z Soudani is not named as a defendant, his actions are foundational to each of Plaintiffs' claims.  The deprivations of constitutional rights Plaintiffs allege flow directly from the conduct underlying the ongoing criminal proceedings.  Simply put, there is no civil action without Mout'z Soudani's alleged criminal activity, which is alleged to involve potentially illegal conduct by some Defendants in this Action.  As Rosenwasser is unable to testify, Mout'z Soudani's testimony would be central to each of Plaintiffs' § 1983 claims. The Court agrees that the substantive overlap between the actions weighs strongly in favor of a stay.

As to factor two, the argument in favor of a stay is strongest where a party is under criminal indictment and simultaneously proceeding to trial on the same charges.  *See Sec. & Exch. Comm'n v. LaGuardia*, 435 F. Supp. 3d 616, 621 (S.D.N.Y. 2020) ("A stay of a civil case is most appropriate where a party to the civil case already has been indicted for the same

---

[2] One district court case has suggested that "a stay is almost never appropriate where the criminal defendant is not a party to the civil action." *Beauchamp v. United States*, No. 97-CV-6372, 1998 WL 180628, at *3 (W.D.N.Y. Jan. 16, 1998).  This decision, however, has been criticized as an "apparent outlier," with a commentary noting that it involved "no argument . . . that the non-party was a critical witness," the activities alleged in the two proceedings were largely unrelated, and (rather than being indicted, for instance) the non-party defendant had received only a letter alerting him to the fact that he was being criminally investigated.  Owen R. Wolfe, *No Fifth? No Problem: The Availability of A Stay of Discovery for Foreign Non-Party Witnesses*, 47 Int'l Law. 291, 293 (2013); *see also Beauchamp*, 1998 WL 180628.  This Action is further distinguishable from *Beauchamp* on the basis that, here, Rosenwasser was originally charged in the criminal proceeding, and the charges were dropped only after he committed suicide—further elucidating the close connection between this civil Action and the criminal proceedings.

conduct."). But, here, the criminal proceedings against a key witness (Mout'z Soudani) are doubtless "likely and imminent as opposed to a remote or purely hypothetical possibility"— Mout'z Soudani and Rosenwasser were indicted in the criminal case, which is set to proceed to trial in less than three months. *See Pullman v. Collins*, 24-CV-1383, 2025 WL 1004731, at *4 (S.D.N.Y. Apr. 3, 2025). (*See United States v. Soudani*, 24-CR-555 (Order dated Feb. 9, 2026) (explaining that the "new trial date" is 6/10/26).) The Court concludes that this factor weighs in favor of a stay, albeit less forcefully than where a parallel criminal case is proceeding against a Party to a civil action. *See similarly AWS Mgmt., LLC*, 2006 WL 824506, at *2.

Defendants' interests weigh at least mildly in favor of a stay. Here, the Complaint names as a John Doe Defendant the Administrator of the Estate of Stewart Rosenwasser. (Compl. ¶ 49.) Because alleged actions for which Rosenwasser and Mout'z Soudani were indicted are so closely intertwined, and because the Administrator for Rosenwasser's Estate remains a Party to this Action, the Court credits Defendants' assertion that there is a greater potential overlap of issues and risk of harm to Defendants. *Cf. El*, 2025 WL 1707817, at *2 (expressing skepticism as to the defendants' reliance on the plaintiff's potential self-incrimination, where, as to certain of the claims, the parties' actions were not interdependent under any theory of either the civil or the criminal action). Plaintiffs also allege that Defendants Hoovler and Borek "knowingly" "facilitated [a] bribery scheme"—the same alleged bribery scheme that forms the backbone of the criminal prosecution. (Compl. ¶ 214.) The Court agrees with Defendants' argument that this allegation suggests that "the instant [A]ction could taint the criminal prosecution and that broader civil discovery rules could infringe upon Hoovler and Borek's Fifth Amendment rights," too. (Defs.' Mem. at 15.) Finally, as Defendants elected to seek a stay, the Court assumes they

would not be burdened by the stay's issuance. *See El*, 2025 WL 1707817, at *2 (reasoning that party should not be able to invoke their opponent's interest when evaluating propriety of a stay).

Plaintiffs' interests unquestionably weigh against the issuance of a stay, as an objecting plaintiff "has a legitimate interest in the expeditious resolution of [a litigation] matter." *El v. Black*, No. 23-CV-10317, 2025 WL 1314240, at *2 (S.D.N.Y. May 6, 2025). However, any harm to Plaintiffs' interest is somewhat reduced given the early stage of the proceedings, and the fact that the stay should be relatively brief, as the criminal proceeding is set to go to trial in June. *See Metrom Rail, LLC v. Siemens Mobility, Inc.*, No. 23-CV-3057, 2024 WL 323374, at *3 (S.D.N.Y. Jan. 29, 2024) ("[T]he preliminary posture of the proceedings favors a stay"). And, in pursuing their case, Plaintiffs would have the benefit of any materials that are made public in the course of the criminal proceedings. *Lurch v. Doe*, No. 22-CV-2324, 2023 WL 12070196, at *1 (S.D.N.Y. Aug. 1, 2023) ("[T]he civil case will likely benefit from the resolution of the criminal case given the ability to use criminal discovery material . . . ."). So Plaintiffs' interests, on balance, weigh slightly against a stay.

As to the fifth factor, a limited stay of these proceedings will serve the interest of the courts and judicial economy. "Given the related nature of the criminal case and this case, the resolution of the criminal case may narrow the issues in this case and streamline discovery with respect to" Mout'z Soudani, whose actions are at the heart of both matters, and Rosenwasser. *AWS Mgmt., LLC*, 2006 WL 824506, at *3. The Parties, including Plaintiffs, may have access to additional information that has been made public, and if Mout'z Soudani is convicted, the conviction may lead to a "more efficient resolution of the present case" because Soudani and Rosenwasser's activities alleged here—from which Plaintiffs' allegations spring—were closely interconnected. *Id. See also Lurch*, 2023 WL 12070196, at *1 (describing the benefits of a stay

until the termination of parallel criminal proceedings, including "the fact that the resolution of the criminal proceeding may resolve or at least simplify many of the issues in the civil proceeding"); *Estes-El v. Long Island Jewish Med. Ctr.*, 916 F. Supp. 268, 270 (S.D.N.Y. 1995) ("[Where it is] undisputed that th[e] action[s] . . . are based on the same events . . . [t]he interest of judicial economy strongly supports a stay."). Here, given the significant degree of substantive overlap, the Court will likely benefit from any findings of fact or law yielded by the criminal proceeding.

As to the final factor, the public interest supports the propriety of a stay. Subverting ordinary criminal discovery rules might harm the underlying criminal prosecution, and courts faced within similar requests for stays have observed that the "public has an overriding interest in the integrity of criminal proceedings, which includes ensuring the integrity and security of Government witnesses." *Sec. & Exch. Comm'n v. Blaszczak*, No. 17-CV-3919, 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018) (quotation marks omitted, alteration adopted). So too, the public's interest may be harmed because a parallel civil action may lead to the "revelation of the identify of prospective witnesses" and a concurrent "opportunity for intimidation," of those witnesses. *Id.* (quotation marks omitted). These risks to the integrity of the criminal proceedings are present here. And while the Court recognizes that there is a public interest in adjudicating the merits of a civil action "regarding allegations of [prosecutorial] misconduct"—as a prosecutor's conduct is "deeply intertwined with the public's interest and trust in its law enforcement"—this interest is not meaningfully harmed by the grant of a brief stay until criminal proceedings have concluded. *El*, 2025 WL 1707817, at *3 (quoting *Rodriguez v. City of New York*, No. 24-CV-06289, 2025 WL 458243, at *3 (E.D.N.Y. Feb. 11, 2025)).

On balance, the six factors weigh in favor of the issuance of a limited stay in this Action. The stay will be effective until judgment is entered in the criminal proceeding before Judge Cathy Seibel.  (*See United States v. Soudani*, 24-CR-555 (S.D.N.Y.).)

B. State Proceedings

Given that the Court has determined that a stay is appropriate on the basis of the criminal proceedings, the Court need not consider at this juncture whether a stay would be appropriate based on Plaintiffs' pending state appeal.  *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CV-4355, 2021 WL 391298, at *3 n.1 (S.D.N.Y. Feb. 4, 2021) ("At this stage, the Court need not, and does not, address the question of whether a stay would be required should either event discussed above occur.")  Accordingly, the Court does not reach this issue.

## III. Conclusion

This Action is stayed until a judgment is entered in the criminal proceeding before Judge Seibel.  (*See United States v. Soudani*, 24-CR-555 (S.D.N.Y.).)  The Parties are directed to provide a joint status update to the Court by no later than June 19, 2026, or sooner in the event of any developments in the criminal proceeding that bear on the status of this Action.

The other requests sought in Defendants' Motion are denied without prejudice to renewal after judgment is entered in the criminal proceeding.  The Clerk of Court is respectfully directed to terminate the Motions pending at Dkt. No. 30 and Dkt. No. 36, and to stay this Action until further order of the Court.

SO ORDERED.

DATED:      April 2, 2026
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE